# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

CAROL ANN SCRIVNER,

      Plaintiff,

v.                                                                              No. CV 17-201 CG

NANCY A. BERRYHILL,
Acting Commissioner of Social Security
Administration,

      Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Plaintiff Carol Ann Scrivner's *Motion to Reverse and Remand for Rehearing, With Supporting Memorandum* (the "Motion"), (Doc. 23), filed September 30, 2017; Defendant Commissioner Nancy A. Berryhill's *Brief in Response to Plaintiff's Motion to Reverse and Remand the Agency's Administrative Decision* (the "Response"), (Doc. 25), filed November 29, 2017; and Ms. Scrivner's *Reply to Brief in Response to Plaintiff's Motion to Reverse and Remand* (the "Reply"), (Doc. 28), filed December 18, 2017.

Ms. Scrivner filed applications for supplemental security income and disability insurance benefits on November 27, 2012, alleging disability beginning September 5, 2012. (Administrative Record "AR" 8). Ms. Scrivner claimed she was limited in her ability to work due to: stress, anxiety, depression, chronic pain, a heel spur, plantar fasciitis, and asthma. (AR 171). Ms. Scrivner later amended her alleged onset date to January 2013. (AR 235). Ms. Scrivner's applications were denied initially on March 7, 2013, and upon reconsideration on October 11, 2013. (AR 8). Ms. Scrivner requested a hearing before an Administrative Law Judge ("ALJ"), which was held on February 25, 2015,

before ALJ James A. Burke. (AR 34). Ms. Scrivner testified at the hearing, and was represented by attorney Ione Gutierrez. (AR 36-43).

On August 26, 2015, the ALJ issued his decision, finding Ms. Scrivner not disabled at any time between her alleged disability onset date through the date of the decision. (AR 18-19). Ms. Scrivner requested review by the Appeals Council, (AR 32), which was denied, (AR 1-3), making the ALJ's decision the Commissioner's final decision for purposes of this appeal.

Ms. Scrivner, who is now represented by attorney Francesca MacDowell, argues in her Motion that the ALJ: (1) failed to properly weigh the medical opinions of Rosalie Davis, Ph.D., Kevin M. Henry, M.D., and Michael F. Gzaskow, M.D.; (2) erred in considering Mr. Scrivner's credibility; and (3) improperly applied the Medical Vocational Guidelines at step five. (Doc. 23 at 6-24). The Court has reviewed the Motion, the Response, the Reply, and the relevant law. Additionally, the Court has meticulously reviewed the administrative record. Because the ALJ erred in his consideration of the opinions of Dr. Davis and Dr. Henry, the Court finds that Ms. Scrivner's Motion should be **GRANTED**.

**I.      Standard of Review**

The standard of review in a Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (citing *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992)). If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands and the

plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). The Commissioner's "failure to apply the correct legal standards, or show . . . that she has done so, are grounds for reversal." *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996) (citing *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994)). A court should meticulously review the entire record but should neither re-weigh the evidence nor substitute its judgment for the Commissioner's. *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214. A court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which is generally the ALJ's decision, rather than the Appeals Council's denial of review. *O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214; *Doyal*, 331 F.3d at 760. An ALJ's decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting" it. *Langley,* 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214. While the Court may not re-weigh the evidence or try the issues *de novo*, its examination of the record must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ]'s findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

## II. Applicable Law and Sequential Evaluation Process

For purposes of supplemental security income and disability insurance benefits, a claimant establishes a disability when she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (2015), 42 U.S.C. § 1382c(a)(3)(A) (2004); 20 C.F.R. §§ 404.1505(a), 416.905(a) (2012). In order to determine whether a claimant is disabled, the Commissioner follows a five-step sequential evaluation process ("SEP"). *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920 (2012).

At the first four steps of the SEP, the claimant bears the burden of showing: (1) she is not engaged in "substantial gainful activity"; (2) she has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and either (3) her impairment(s) either meet or equal one of the "Listings"[1] of presumptively disabling impairments; or (4) she is unable to perform her "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i–iv), 416.920(a)(4)(i–iv); *see Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). If the ALJ determines the claimant cannot engage in past relevant work, the ALJ will proceed to step five of the evaluation process. At step five the Commissioner must show the claimant is able to perform other work in the national economy, considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. *Grogan*, 399 F.3d at 1261.

---

[1] 20 C.F.R. pt. 404, subpt. P, app. 1.

### III. Background

Ms. Scrivner claimed she was limited in her ability to work due to: stress, anxiety, depression, chronic pain, a heel spur, plantar fasciitis, and asthma. (AR 171). At step one, the ALJ determined Ms. Scrivner had not engaged in substantial gainful activity since January 1, 2013, the alleged onset date. (AR 10). At step two, the ALJ found that Ms. Scrivner has the following severe impairments: fibromyalgia, osteoarthrosis/plantar fasciitis, and degenerative disc disease. (AR 11). At step three, the ALJ determined that none of Ms. Scrivner's impairments, solely or in combination, equaled one of the listed impairments in 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926. (AR 12-13).

At step four, the ALJ found that Ms. Scrivner has the RFC to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a), 416.967(a), with the following limitations: she can lift and carry up to 20 pounds occasionally and 10 pounds frequently; she can sit for six hours in an eight-hour workday; she can stand and/or walk for two hours in an eight-hour workday; she can occasionally climb ramps, stairs, ladders, or scaffolds; and she can occasionally balance, stoop, kneel, crouch, and crawl. (AR 13).

In formulating Ms. Scrivner's RFC, the ALJ stated that he considered Ms. Scrivner's symptoms and the extent to which those symptoms can reasonably be accepted as consistent with objective medical and other evidence, as required by 20 C.F.R. §§ 404.1529 and 416.929, and Social Security Rulings ("SSR") 96-4p and 96-7p. *Id.* The ALJ also stated that he considered opinion evidence in accordance with the requirements of 20 C.F.R. §§ 404.1527 and 416.927 and SSRs 96-2p, 96-5p, 96-6p, and 06-3p. *Id.* The ALJ found that Ms. Scrivner's statements concerning the intensity,

persistence and limiting effects of her symptoms are not entirely consistent with the evidence in the record. (AR 14).

Turning to the medical evidence in the record, the ALJ gave great weight to the State Agency psychological consultants' opinions that Ms. Scrivner's mental impairments are non-severe. *Id.* The ALJ reasoned that their opinions are consistent with the medical evidence as a whole, and specifically with the findings of Dr. Gzaskow, and evidence that Ms. Scrivner's mental impairments are stable with medication. (AR 14-15). The ALJ also gave great weight to the State Agency medical consultants' opinions regarding Ms. Scrivner's physical limitations because they are supported by the medical evidence as a whole. (AR 15).

The ALJ gave little weight to the September 2012 opinions of Dr. Davis, stating that they do not account for improvement in Ms. Scrivner's physical and mental symptoms with subsequent treatment, and because Dr. Davis only provides vague reasoning for her findings of limitations. *Id.* The ALJ also gave Dr. Davis's March 2015 opinions little weight, stating that they are inconsistent with the medical record, and Dr. Davis did not treat Ms. Scrivner for physical impairments. (AR 15-16). Next, the ALJ gave little weight to the opinions of Dr. Henry, stating that they fail to account for Ms. Scrivner's subsequent positive responses to treatment for fibromyalgia and stabilization of her mental symptoms. (AR 16). In addition, the ALJ gave Dr. Gzaskow's opinions partial weight, finding that the evidence in the record is consistent with Dr. Gzaskow's opinion as to Ms. Scrivner's social functioning, but does not support Dr. Gzaskow's findings regarding her limitations in performing complex work-related tasks. *Id.*

Finally, the ALJ gave partial weight to the opinions made by Ms. Scrivner's friend in a Third Party Function Report. (AR 16-17). The ALJ gave great weight to the friend's opinion that Ms. Scrivner can lift 20 pounds because that is supported by the record as a whole. (AR 17). However, the ALJ gave little weight to the friend's opinions that Ms. Scrivner has general difficulties with various functions because the opinions are vague as to the extent of Ms. Scrivner's difficulties, are unclear as to what types of physical activities Ms. Scrivner is unable to accomplish due to pain, and do not provide a degree of limitation. *Id.*

The ALJ found that Ms. Scrivner is unable to perform any of her past relevant work, so the ALJ proceeded to step five. *Id.* At step five, the ALJ noted that Ms. Scrivner was 44 years old on the alleged disability onset date, and therefore classified as "a younger individual" in accordance with the Regulations. *Id.* The ALJ also determined that Ms. Scrivner has at least a high school education and is able to communicate in English. *Id.* Next, the ALJ noted that, if Ms. Scrivner had the RFC to perform the full range of sedentary work, a finding of not disabled would be directed by Medical-Vocational Rule 201.21. (AR 18). The ALJ found that the additional limitations in the ALJ's RFC determination have little or no effect on the occupational base of unskilled sedentary work. Therefore, the ALJ found that a finding of not disabled is appropriate under the framework of Medical-Vocational Rule 201.21, and Ms. Scrivner is not disabled pursuant to 20 C.F.R. §§ 404.1520(g) and 416.920(g). *Id.*

## IV. Analysis

### A. The ALJ's Consideration of Medical Opinion Evidence

Ms. Scrivner first contends that the ALJ failed to properly weigh the medical opinions of Dr. Davis, Dr. Henry, and Dr. Gzaskow. (Doc. 23 at 6-19). In response, the Commissioner contends that the ALJ properly considered these doctors' opinions and did not err in making his RFC determination. (Doc. 25 at 7-13).

ALJs must evaluate and weigh every medical opinion in the record. 20 C.F.R. §§ 404.1527(b)-(c), 416.927(b)-(c); *see also* SSR 06-03p, 2006 WL 2329939 (Aug. 9, 2006). Every medical source opinion should be weighed by the ALJ in consideration of the following applicable "deference factors":

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Watkins v. Barnhart*, 350 F.3d 1297, 1300-01 (10th Cir. 2003) (citation omitted); *see also* 20 C.F.R. §§ 404.1527(c), 416.927(c). Ultimately, the ALJ must give good reasons that are "sufficiently specific to [be] clear to any subsequent reviewers" for the weight that she ultimately assigns the opinions. *Langley*, 373 F.3d at 1119 (citation omitted). Failure to do so constitutes legal error. *See Kerwin v. Astrue*, 244 Fed. Appx. 880, 884 (10th Cir. 2007) (unpublished).

In addition, "treating sources" are generally entitled to more weight than other sources, given their treatment relationship with the claimant. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). Accordingly, ALJs must follow a particular, two-step

process when evaluating and weighing opinions from treating sources. 20 C.F.R. §§ 404.1527(b), 416.927(b); *see Watkins v. Barnhart*, 350 F.3d 1297, 1300-01 (10th Cir. 2003). First, the ALJ must decide whether the treating source's opinions are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "are not inconsistent with the other substantial evidence" in the record. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). If the treating source's opinions satisfy both criteria, they are entitled to controlling weight. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

If a treating source's opinions are not entitled to controlling weight, they are still entitled to deference. SSR 96-2p, 1996 WL 374188, at *4 (July 2, 1996). In deciding how much weight to give a treating source's opinion, the ALJ must consider the factors set forth in 20 C.F.R. §§ 404.1527(c)(1-6), 416.927(c)(1-6). The ALJ must "make clear how much weight the [treating source's] opinion is being given (including whether it is being rejected outright) and give good reasons, tied to the factors specified . . . for the weight assigned." *Krauser*, 638 F.3d at 1324 (citing *Watkins*, 350 F.3d at 1330); SSR 96-2p, 1996 WL 374188 at *5 (an ALJ must "give good reasons" that are "sufficiently specific to make clear to any subsequent reviewers the weight" she gave to the opinion "and the reasons for that weight"); *but see Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) (an ALJ is not required to "apply expressly each of the six relevant factors in deciding what weight to give a medical opinion."). Moreover, in rejecting a treating source's opinion, the ALJ "may not make speculative inferences from medical reports" and may not reject the opinion based on her own credibility judgments, speculation, or lay opinion. *McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002). Rather, an ALJ

9

may only reject a treating source's opinion based on outright contradictory medical evidence. *Id.*

An ALJ's reasoning is not sufficiently specific if she merely states an opinion is unsupported by or inconsistent with the medical evidence without further explanation. *Langley*, 373 F.3d at 1122-23; *see also Cagle v. Astrue*, 266 Fed. Appx. 788, 792-793 (10th Cir. 2008) (unpublished). In addition, "[a]n ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability." *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) (citations omitted). Instead, an ALJ "must . . . explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996). Further, the Commissioner may not rationalize the ALJ's decision post hoc, and "[j]udicial review is limited to the reasons stated in the ALJ's decision." *Carpenter v. Astrue*, 537 F.3d 1264, 1267 (10th Cir. 2008) (citation omitted).

### 1. Dr. Davis's Opinions

Ms. Scrivner first argues the ALJ improperly weighed and considered the opinions of Ms. Scrivner's treating psychologist, Dr. Davis. (Doc. 23 at 6-10). Ms. Scrivner contends that the ALJ failed to consider that Dr. Davis's opinions that Ms. Scrivner would miss more than four days of work per week, and that her condition is worse when her pain flares up, are consistent with the opinions of Dr. Henry. *Id.* at 9. Ms. Scrivner further contends that the ALJ erred by finding that Dr. Davis's opinions are not believable because Ms. Scrivner did not need emergency medical treatment. *Id.*

In response, the Commissioner first contends that because Dr. Davis did not opine that Ms. Scrivner would consistently experience any work-related mental limitations, the ALJ's RFC assessment "was generally congruent with her opinion." (Doc. 25 at 8). Alternatively, the Commissioner contends that to the extent Dr. Davis's opinions suggest additional limitations, the ALJ provided valid and well-supported reasons for giving her opinions little weight. *Id.* at 8-9.

Dr. Davis treated Ms. Scrivner from December 2008 through January 2015. *See* (AR 245-49; 337-61; 422-29; 498-503; 517-32). On March 2, 2015, Dr. Davis prepared a Medical Source Statement, in which she assigned Ms. Scrivner a Global Assessment of Functioning ("GAF") score of 50, and diagnosed her with Major Depressive Disorder, fibromyalgia, sleep apnea, osteoarthritis of the hips, plantar fasciitis, gluten intolerance, seasonal asthma, and irritable bowel syndrome. (AR 245). Dr. Davis opined that Ms. Scrivner "is clinically depressed owing to chronic, incurable pain" and would miss more than four days of work per month due to her impairments. (AR 245, 249). Dr. Davis further opined that Ms. Scrivner's abilities are contingent on her state of pain, such that on good days she is highly functioning, but on bad days she is incapacitated. (AR 248).

The ALJ stated that he gave Dr. Davis's opinions little weight because: they are inconsistent with the record as a whole; Ms. Scrivner only sees Dr. Davis approximately once a month; and the record shows that Ms. Scrivner has not needed emergency medical treatment. (AR 15). The ALJ further found that Ms. Scrivner's "described flare-ups do not appear to be so frequent as to warrant absences up to four days per month, as she is relatively consistent with scheduled appointments and able to maintain a part-time job." *Id.* Regarding Dr. Davis's finding that Ms. Scrivner is incapacitated on some

days, the ALJ found that this opinion has low probative value because Dr. Davis did not treat Ms. Scrivner for physical impairments so the opinion is likely based on Ms. Scrivner's subjective reports. (AR 15-16).

First, the Court rejects the Commissioner's contention that the ALJ's RFC determination does not conflict with Dr. Davis's opinions. The ALJ did not include any non-exertional limitations in his RFC determination. Therefore, the RFC in this case does not account for Dr. Davis's opinions that Ms. Scrivner's pain would cause her to miss more than four days of work per month, and that she would be incapacitated on some days due to pain. If an ALJ's RFC assessment conflicts with an opinion from a medical source, the ALJ must explain why the opinion was not adopted. *See* SSR 96-8p, 1996 WL 374184, at *7. Therefore, the ALJ was required to adequately explain why he did not include limitations in his RFC determination that reflect Dr. Davis's findings.

The ALJ states that he rejected Dr. Davis's opinions because they are inconsistent with the record as a whole. (AR 15). While this is a facially valid reason for rejecting a medical source opinion, the ALJ is required to support this statement with evidence from the record. *See Langley*, 373 F.3d at 1122-23 (explaining that an ALJ's reasoning is not sufficiently specific if he merely states an opinion is unsupported by or inconsistent with the medical evidence without further explanation). Here, the ALJ fails to cite to any medical evidence in the record that contradicts Dr. Davis's findings. Moreover, the ALJ fails to note that Dr. Davis's opinions are supported by the opinions of Dr. Henry. For example, Dr. Henry opined that Ms. Scrivner's pain is worsened by stress, her impairments are likely to produce "good days" and "bad days," and that Ms. Scrivner would miss about four days of work per month. (AR 418-20). The ALJ's

rejection of Dr. Davis's opinions without discussing the evidence that supports them is legal error. *See Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) ("An ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability.") (citations omitted). Therefore, the Court finds that the ALJ failed to sufficiently support his finding that Dr. Davis's opinions are inconsistent with the record.

In addition, the ALJ states that he discounted Dr. Davis's opinions because Ms. Scrivner only sees Dr. Davis once a month. (AR 15). However, the ALJ fails to explain why monthly treatment diminishes Dr. Davis's opinions, and does not address that Dr. Davis has been treating Ms. Scrivner since 2008. The ALJ also fails to provide support for his reasoning that Dr. Davis's opinions should be discounted because Ms. Scrivner did not need emergency medical treatment. As Ms. Scrivner notes, even though she may not have sought emergency treatment for her conditions, she consistently reported that pain affected her ability to work, and both Dr. Davis and Dr. Henry found that she is not malingering. *See* (Doc. 23 at 9); *see also* (AR 245), (AR 418).

Similarly, the record does not support the ALJ's conclusion that it is unlikely that Ms. Scrivner would miss four days of work per month because she is able to maintain a part-time job. While Ms. Scrivner testified that she is working part time, she also testified that she is only able to work up to 16 to 20 hours per week and is unable to work three days in one week due to her impairments. (AR 37). Finally, the record does not support the ALJ's statement that Dr. Davis's opinions are based on Ms. Scrivner's subjective reports because Dr. Davis did not treat Ms. Scrivner for physical impairments. Dr. Davis treated Ms. Scrivner since 2008 and provided close to 50 pages of medical records to

support her findings. In rejecting a treating source's opinion, an ALJ "may not make speculative inferences from medical reports" and may not reject the opinion based on her own credibility judgments, speculation, or lay opinion. *McGoffin*, 288 F.3d at 1252. Rather, an ALJ may only reject a treating source's opinion based on outright contradictory medical evidence. *Id.* Therefore, for the reasons stated above, the Court finds that the ALJ failed to provide sufficient support for his decision to reject Dr. Davis's opinions.

### 2. Dr. Henry's Opinions

Ms. Scrivner next contends the ALJ improperly weighed and considered the opinions of Ms. Scrivner's treating physician, Dr. Henry. (Doc. 23 at 16-19). Ms. Scrivner contends that the ALJ's reason for rejecting Dr. Henry's opinions is contrary to the evidence in the record, and that the ALJ erred by relying on Ms. Scrivner's testimony instead of Dr. Henry's findings. *Id.* at 17-18.

In response, the Commissioner argues the ALJ provided sufficient reasons for discounting Dr. Henry's opinions, and that the record supports the ALJ's reasoning. (Doc. 25 at 11-12). Specifically, the Commissioner states that the record shows that Ms. Scrivner's physical and mental symptoms improved significantly after Dr. Henry authored his opinion, and that Ms. Scrivner's testimony contradicts Dr. Henry's opinion regarding Ms. Scrivner's ability to lift. *Id.* at 11.

Dr. Henry began treating Ms. Scrivner in April 2013, and treated her five times prior to completing a Medical Source Statement on December 27, 2013. (AR 417-421). In this statement, Dr. Henry diagnosed Ms. Scrivner with chronic pain, major depressive disorder, anxiety, sleep apnea, and fibromyalgia. (AR 417). He stated that Ms.

14

Scrivner's pain and other symptoms are severe enough to frequently interfere with the attention and concentration needed to perform simple work tasks, and that she is capable of only low stress jobs. (AR 418). Additionally, he opined that Ms. Scrivner: can walk for one city block without rest or severe pain; can stand for 30 minutes at a time; can stand or walk for about two hours in an 8-hour workday; can sit for about four hours in an 8-hour workday; needs to walk around for five minutes at least every 30 minutes; must be able to shift her position at will; and must be allowed to take unscheduled breaks. (AR 418-19). He also found that Ms. Scrivner can lift less than 10 pounds occasionally and up to 10 pounds rarely. (AR 419). Finally, Dr. Henry opined that Ms. Scrivner's impairments are expected to produce "good days" and "bad days," and that she is likely to be absent from work about four days per month. (AR 420).

The ALJ stated that he gave Dr. Henry's opinions little weight because they do not account for Ms. Scrivner's positive responses to treatment for fibromyalgia and the stabilization of her mental symptoms. (AR 16). The ALJ further stated that Ms. Scrivner's testimony that she can lift up to 20 pounds, as opposed to the 10 pounds Dr. Henry opined she could lift, suggests that Dr. Henry's findings are "unduly restrictive." *Id.*

In making his decision to discount Dr. Henry's opinions, the ALJ relied on Dr. Henry's treatment notes dated August 15, 2014, wherein Dr. Henry states that Ms. Scrivner's trigger point injections and medications are helping with her pain and that her moods have improved significantly over the last year. (AR 431-32). However, the ALJ fails to note that other evidence in the record indicates that Ms. Scrivner was still suffering from pain and mental instability after Dr. Henry's December 27, 2013, Mental

Source Statement and after the August 15, 2014, appointment. For example, throughout 2014 Dr. Henry noted the following: in January 2014, Ms. Scrivner was having difficulty with focusing due to stress, was having fatigue and poor sleep, and had pain in her lower back and in between her shoulder blades, (AR 473); in May 2014, Ms. Scrivner's fibromyalgia was not well controlled, she was having daily fatigue and only temporary relief from pain, and Dr. Henry referred her for a pain consultation, (AR 450); and in February 2015, Ms. Scrivner was sleeping better but was still often fatigued and suffering from "bad pain," (AR 534). In addition, in March 2015, Dr. Davis opined that Ms. Scrivner "is clinically depressed owing to chronic, incurable pain," would miss more than four days of work per month due to her impairments, and her abilities are contingent on her state of pain, such that on good days she is highly functioning, but on bad days she is incapacitated. (AR 245, 248-49). The ALJ's decision to reject Dr. Henry's opinions because Ms. Scrivner's impairments had subsequently improved is therefore not supported by the record, and the ALJ's failure to discuss the medical evidence that supports Dr. Henry's findings without explanation is legal error. *See Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996) (an ALJ must "discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects").

The ALJ also stated that Ms. Scrivner's testimony that she can lift up to 20 pounds suggests that Dr. Henry's opinions are "unduly restrictive." (AR 16). The ALJ failed to note, however, that Ms. Scrivner stated that she could lift 20 pounds "but not repetitively." (AR 186). Moreover, even though this statement by Ms. Scrivner conflicts with Dr. Henry's findings regarding her ability to lift, the ALJ fails to explain how it

renders the rest of Dr. Henry's findings too restrictive. This is especially concerning when many of Dr. Henry's findings, such as that Ms. Scrivner is limited in her ability to attend and concentrate, is capable of only low stress jobs, is likely to miss four days of work per month, and has "good days" and "bad days," are consistent with Dr. Davis's opinions. Again, an ALJ "may not make speculative inferences from medical reports," may not reject a treating source's opinion based on his own credibility judgments, speculation, or lay opinion, and may only reject a treating source's opinion based on outright contradictory medical evidence. *McGoffin*, 288 F.3d at 1252. Therefore, the Court finds that the ALJ failed to provide adequate support for his decision to reject Dr. Henry's opinions.

### 3. Dr. Gzaskow's Opinions

Ms. Scrivner contends that the ALJ erred by rejecting consultative examiner Dr. Gzaskow's opinion that Ms. Scrivner is markedly limited in her ability to make judgments regarding complex work-related decisions. (Doc. 23 at 10-12). Ms. Scrivner contends that the ALJ failed to consider that the combination of fibromyalgia, foot problems, and mental impairments, have coalesced to diminish Ms. Scrivner's functional capabilities, and that medical evidence from other medical sources confirm this. *Id.* at 12. In response, the Commissioner argues that the ALJ provided sufficient support for his decision to discount Dr. Gzaskow's opinions, and that the evidence in the record supports the ALJ's findings. (Doc. 25 at 9-10).

Dr. Gzaskow examined Ms. Scrivner on April 6, 2015 and diagnosed her with a mood disorder, general anxiety disorder, depressive disorder, post-traumatic stress disorder ("PTSD"), chronic pain syndrome, heel spurs, plantar fasciitis, and generalized

arthritis. (AR 575). He opined that she is moderately limited in her abilities to understand, remember, and carry out complex instructions, and is markedly limited in her ability to make judgments on complex work-related decisions. (AR 578). He further opined that she has no difficulty interacting appropriately with the public and supervisors, and mild difficulty interacting appropriately with co-workers and responding to usual work situations and changes in a routine work setting. (AR 579)

The ALJ gave Dr. Gzaskow's opinions partial weight, stating that the evidence is generally consistent with Dr. Gzaskow's opinions as to Ms. Scrivner's social functioning. (AR 16). However, the ALJ stated that Dr. Gzaskow's opinions regarding Ms. Scrivner's abilities to attend to complex tasks are not supported by the evidence in the record. *Id.* Specifically, the ALJ relied on Dr. Gzaskow's findings that Ms. Scrivner has average general intellectual functioning with no deficits in immediate recall and memory, intact abilities to calculate and think abstractly, and good insight and judgment. *Id.* (citing AR 575). Therefore, the ALJ gave Dr. Gzaskow's opinions that Ms. Scrivner is limited in her abilities to attend to complex tasks little weight.

While Ms. Scrivner contends that the ALJ erred in rejecting Dr. Gzaskow's opinions relating to her ability to attend to complex work tasks, the Court finds that the ALJ provided sufficient reasons for his rejection of these opinions. The ALJ explained that Dr. Gzaskow's notes do not support his findings that Ms. Scrivner is limited in her abilities regarding complex work, and specifically cited to Dr. Gzaskow's findings regarding Ms. Scrivner's intellectual functioning, recall, memory, and abilities to calculate and think abstractly. (AR 16) (citing AR 575). There is also evidence in the record that supports the ALJ's decision to discount Dr. Gzaskow's opinions, such as Dr.

18

Davis's findings that Ms. Scrivner has unlimited or very good abilities to understand, remember, and carry out detailed instructions. (AR 248). Therefore, since the ALJ provided specific reasons for discounting Dr. Gzaskow's opinions, and these reasons are supported by the evidence in the record, the Court finds that the ALJ did not err in his consideration of Dr. Gzaskow's opinions. *See Langley*, 373 F.3d at 1118 (explaining that a Court should neither re-weigh the evidence nor substitute its judgment for the Commissioner's).

V.     Conclusion

For the foregoing reasons, the Court finds that the ALJ failed to properly consider the opinions of Dr. Davis and Dr. Henry. The Court does not address Ms. Scrivner's remaining claims because those claims may become moot upon remand.

**IT IS THEREFORE ORDERED** that Ms. Scrivner's *Motion to Reverse and Remand for Rehearing, With Supporting Memorandum*, (Doc. 23), is **GRANTED**.

_____
THE HONORABLE CARMEN E. GARZA
UNITED STATES MAGISTRATE JUDGE